**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL H. WU and CHRISTINA T. WU, ) | |
| ) | 14-cv-3925 |
| Plaintiffs, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Michael and Christina Wu (collectively "the Wus") filed a Second Amended Complaint, *pro se*, seeking a $38,800.02 refund from the Internal Revenue Service ("IRS"). They allege that the IRS incorrectly taxed them for excess IRA contributions for 2009. The government moves to dismiss the Wus' complaint for lack of subject matter jurisdiction and for failure to state a claim [16]. The Court denies the government's motion.

**Background**

Federal law permits taxpayers to save money for retirement by making tax-deductible contributions to accounts known as Individual Retirement Accounts (IRAs). *See generally* I.R.C. §§ 219, 408. Taxpayers may only make a limited amount of tax-free contributions to their IRAs each year. The tax code, generally speaking, describes deposits exceeding the annual allowable amount as "excess contributions." I.R.C. § 4973(b). The government imposes a tax on excess contributions at a rate of 6 percent for each taxable year. § 4973(a).

In 2007, the Wus sold their main home and each deposited $200,000 into a traditional IRA. (Dkt. 16 at 16). Each $200,000 contribution constituted an "excess contribution" under the tax

1

code.[1] These contributions, along with accrued earnings on the contributions, remained in Michael's and Christina's accounts until March 23, 2010. On that date, the Wus each withdrew the excess contributions and earnings by transferring the money to a different bank account. (Dkt. 12 at 40-41).

In March 2010, the Wus each submitted tax return forms that acknowledged that they had contributed more than the allowable amount to their IRAs in the 2007 tax year. (Dkt. 16, Christina's form for the 2007 tax year, at 19–20; Dkt. 21, Christina's 2008 form, at 46–47; Dkt. 23, Christina's 2009 form; Dkt. 12, Michael's 2009 form, at 56). After submitting their tax returns, the Wus wrote to the IRS on March 18 requesting that it waive the taxes associated with the Wus' 2007 excess deposits. (Dkt. 16 at 17). The Wus explained that they had been unaware of the IRA contribution limit and of the taxes on excess contributions. *Id.* Several months later, the IRS wrote to the Wus and denied their request, explaining that it had no legal authorization to waive the tax on excess contributions. (Dkt. 12 at 48–51). The IRS levied taxes on the Wus' 2007 excess contributions, along with penalties for filing their tax returns late, interest on the late payment, and penalties on the late payment. (Dkt. 16 at 26–37). The Wus agreed to pay the IRS $32,443.12 by June 7, 2010, which they did. (Dkt. 12 at 24).

In February 2012, the Wus submitted three refund claims to the IRS seeking a total of $27,200.02. (Dkt. 12 at 8–10). The Wus also claim to have submitted copies of four additional refund claims that seek a total of $10,800. On April 19, 2013, the IRS denied the Wus' request for a refund and later denied reconsideration. (Dkt. 12 at 19–21). On July 2, 2013, in response to an inquiry from the Wus, the IRS issued a detailed letter further explaining the reasons for denying the Wus' refund request. (Dkt. 12 at 22–23).

According to the complaint, the Wus allege that the IRS owes them a $688.41 refund on an

---

[1] It appears that only $199,525 of each deposit may have constituted "excess contributions," Dkt. 12 at 58, but the Wus later each reported $200,000 as the amount of excess contributions on their tax returns. The Court treats $200,000 as the appropriate figure for purposes of this motion.

2

interest payment because the IRS incorrectly determined the date of the Wus' payment, in violation of law. They further allege that the IRS owes them a refund on taxes paid for 2009 because they withdrew the relevant funds from their IRA accounts before "tax day" for 2009, i.e., April 15, 2010. The IRS also allegedly owes them a refund on penalties paid for late filings because the penalty does not apply to tax returns for excess IRA contributions. The government moves to dismiss the complaint in its entirety.

**Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) allows for dismissal for lack of subject matter jurisdiction. Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When ruling on a motion to dismiss, this Court must accept all well pleaded allegations as true and draw all reasonable inferences in favor of the non-moving party. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Pisciotta v. Old Nat. Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007).

**Discussion**

*1. Four Refund Claims Totaling $10,800*

The government contends that this Court lacks subject matter jurisdiction over the group of the Wus' refund claims, totaling $10,800, because the Wus never submitted those claims to the IRS. While federal law confers jurisdiction on district courts over suits seeking recovery of IRS taxes and penalties, 28 U.S.C. § 1346(a), taxpayers may not file a refund suit "until a claim for refund or credit has been duly filed with the [government]." I.R.C. § 7422(a).

This Court finds that the Wus sufficiently allege that they submitted the claims to the IRS to

3

confer jurisdiction on the district court. *See* Dkt. 22 at 2. Although the averment that the second set of claims was duly filed appears in the Wus' response brief and not in their complaint, this Court liberally construes *pro se* plaintiffs' filings. *See Arnett v. Webster,* 658 F.3d 742, 751 (7th Cir. 2011). Moreover, the government appears to treat the Wus' factual statements in the response brief as part of the pleadings. [2] The government further maintains that the Wus cannot now file their claims because the statutory limitation period ended in March 2013. Taxpayers must file refund claims "within 3 years from the time the [tax] return was filed or 2 years from the time the tax was paid, whichever period expires the latter." § 6511. The Wus submitted the tax returns acknowledging the excess contributions in March 2010, and they paid what they owed in 2010 (it appears that a single payment was made in April 2011). The Wus attached to their complaint copies of the four refund claims in question. (Dkt. 12 at 11–14). Although the claims are undated, the Court concludes that the Wus adequately alleged that they "duly filed" the second set of claims within the limitation period.

*2. Refund Claim for $688.41 in Interest*

One of the Wus' refund claims seeks $688.41 for a payment made on interest. The government contends that this claim also fails for lack of subject-matter jurisdiction. First, the government asserts that the Wus' argument in support of this claim is "difficult to discern." Dkt. 16 at 6. This Court disagrees. They claim that their tax payment was postmarked June 1, 2010, and they provide a copy of the postmark. (Dkt. 12 at 29). They further claim that the IRS, incorrectly, deemed June 11, 2010, as the date of payment, and they provide a copy of the account transcript. (Dkt. 12 at 32). Under federal law, "the date of the United States postmark stamped on the cover [of an envelope] in which . . . [a] payment, is mailed shall be deemed to be . . . the date of payment." I.R.C.

---

[2] In its reply brief, the government claims that the Wus "do not directly refute th[e] allegation" that the refund claims in question "had never been filed by the plaintiffs with the IRS." (Dkt. 24 at 3). The government has no basis for this assertion. The Wus' response brief states: "Deny [the government's] material allegations of fact [that the claims were never filed.] Allege that the second set of claims was duly filed . . . ." (Dkt. 22 at 2).

4

§ 7502(a). Thus, the Wus clearly contend that the IRS mistakenly charged them interest for a late payment.

The government also urges dismissal of the interest claim on the ground that it rested on a different basis than the Wus now present in court. The claim, which is attached to the complaint, states that Michael submitted payment by certified mail "in order to meet IRS deadline." (Dkt. 12 at 8). This is the same argument that the Wus now present in court. The government's argument to the contrary is without merit.

Additionally, the government moves to dismiss this claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, arguing that §7502 did not apply to the Wus' payment deadline. The Wus agreed to pay the IRS the amount owed by June 7, 2010, which the IRS confirmed in writing. (Dkt. 12 at 24). The government asserts that § 7502(a)'s postmark rule did not apply to the Wus' deadline because it only applies to deadlines created by statute. However, the statute, on its face, applies to deadlines otherwise set by the IRS. *See* §7502(a) (applying to any payment made "within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws."). Here, the IRS established a prescribed period by letter, and so the postmark rule applies. The Wus have thus adequately stated a claim.

3. *Two Refund Claims, Totaling $26,511.61, for 2009 Taxes*

Michael and Christina each seek a refund for the taxes they paid on their 2009 excess contributions. The government argues that the Wus needed to withdraw the funds by tax day 2009 to avoid the excess contribution tax for 2009. The IRS imposes the tax for both the taxable year in which the contributions are actually deposited and for each subsequent year at the end of which the excess contributions remain in the IRA. To avoid the 6 percent tax, taxpayers must simply withdraw the excess contributions (along with accrued earnings) from the IRA "on or before the day prescribed by law (including extensions of time) for filing [a] return for [the] taxable year," i.e., on or

5

before "tax day." § 408(d)(4)(A). The IRS does not consider funds withdrawn before tax day ever to have been excess contributions at all. § 4973(b).

Here, Michael and Christina each deposited $200,000 into their IRAs in 2007. The Wus did not withdraw the funds until March 23, 2010. According to a May 2010 letter the Wus attached to their complaint, the IRS told the Wus that they could avoid the tax by "complet[ing] your withdrawal by the date your tax return for that year is due." (Dkt. 12 at 42). Although the funds entered the Wus' IRA accounts in 2007, the Wus' 2009 claims are in fact based on the "excess contributions" sitting in their accounts in 2009. Under the statutory formula for determining the amount of "excess contributions," the Wus' funds constituted excess contributions in 2009, even though they deposited the funds in 2007. It makes no difference whether the excess contributions result from funds deposited that taxable year or from funds deposited in the preceding taxable years. *See* § 4973(b). The Court, therefore, denies the government's motion as to the refund claims for 2009.

**CONCLUSION**

For the reasons stated herein, this Court finds it has jurisdiction over the claims and the Second Amended Complaint adequately states a claim. The Court denies the government's motion [16] to dismiss and schedules a status hearing for February 6, 2015, at 9:00 a.m.

IT IS SO ORDERED.

Dated: February 3, 2015

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

6