# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL H. WU and CHRISTINA T. WU, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 14-cv-3925 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On August 1, 2014, the government moved to dismiss Michael and Christina Wu's (the "Wus") second amended complaint in its entirety for lack of subject matter jurisdiction and failure to state a claim. The Court denied the government's motion and set a status hearing. In light of the parties' oral motions, the Court allowed the Wus leave to file an amended complaint and set a briefing schedule for the government's motion to reconsider the order denying its motion to dismiss. The Wus filed their third amended complaint, asserting the same claims identified in their previous complaint with some changes to the penalties claims. The government then filed its motion for reconsideration and also moved to dismiss the third amended complaint. Both parties addressed the motions to dismiss and reconsideration, and the Court heard oral argument on June 5, 2015. The Court considered the evidence and arguments in the government's motion for reconsideration together with its motion to dismiss. For the reasons below, the Court dismisses the two refund claims for 2009 taxes and denies the motion for reconsideration as moot.

**Legal Standard**

A court must dismiss any action which lacks subject matter jurisdiction. The party

asserting jurisdiction has the burden of establishing it under Rule 12(b)(1). *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). "On a motion to dismiss for lack of subject matter jurisdiction, the court is not bound to accept the truth of the allegations in the complaint, but may look beyond the complaint and the pleadings to evidence that calls the court's jurisdiction into doubt." *Bastien v. AT & T Wireless Servs., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000). However, when reviewing a defendant's Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Detailed factual allegations are not required, but the plaintiff must allege facts that when "accepted as true ... state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the complaint's factual content allows the Court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Id.*

**Discussion**

*1. Four Refund Claims for Late Penalties Totaling $15,960*

The Court refers and incorporates herein the summary of facts from its opinion denying the government's motion to dismiss the second amended complaint. (*See* Dkt. #32.) The government contends that this Court lacks subject matter jurisdiction over the four refund claims for late penalties totaling $15,960, because the Wus never submitted those claims to the IRS. Federal law confers jurisdiction on district courts over suits seeking recovery of IRS taxes and penalties, 28 U.S.C. § 1346(a), however, a taxpayer may not file a refund suit "until a claim for refund or credit has been duly filed with the Secretary [of Treasury]," or, the IRS. 26 U.S.C. § 7422(a); *Nick's Cigarette City, Inc. v. United States*, 531 F.3d 516, 520 (7th Cir. 2008) (citing

*Martin v. United States*, 833 F.2d 655, 658-59 (7th Cir. 1987) (holding that "[a] timely sufficient claim for refund is a jurisdictional prerequisite to a refund suit")).

The Wus do not contend that the claim forms attached to their complaint as Exhibits A-4 to A-7 were ever filed with the IRS. Rather, the Wus allege that they informally filed "protective" claims for refund prior to filing this action and the attached formal claims amend the ones filed informally. Protective claims for refund are not provided for in the Internal Revenue Code, however, the IRS' practice of allowing informal claims, oftentimes referred to as protective claims, has been developed through case law and in IRS publications. *See e.g., United States v. Commercial Nat'l Bank*, 874 F.2d 1165, 1171 (7th Cir. 1989); Internal Revenue Manual ("IRM") § 4.90.7.1 at ¶ 5. Informal claims toll the statute of limitations until a taxpayer can file a formal refund request. *See Commercial Nat'l Bank*, 874 F.2d at 1170; *United States v. Kales*, 314 U.S. 186, 190, 191,193 (1941). A "protective" claim is generally viewed narrowly and applied to instances where the taxpayer's right to receive a refund is contingent upon the occurrence of a future event such as a change in tax law, an audit or pending litigation. *See Id.*; IRM § 4.90.7.1. Although a taxpayer oftentimes follows her informal submissions with proper formal claims before initiating litigation, it is not a requirement; particularly where, as is the case here, the IRS has considered and disallowed the claim. *See Greene-Thapedi v. United States*, 549 F.3d, 530, 533 (7th Cir. 2008) (pre-litigation "formal claims" allow the government an opportunity to address the problem administratively); *Commercial Nat'l Bank*, 874 F.2d at 1174.

Here, the Wus contend in their pleadings and in oral argument that their IRS filings in the March 18, 2010, "Request to Waive Tax Penalty" and the June 23, 2011, "Appeal Request for Abatement for Tax Penalties" letters are protective or informal claims.[1] The March 18, 2010,

---

[1] Although the June 23, 2011, letter is attached to the Wus' response to the government's first motion to dismiss, the Court notes that it is properly considered given the plaintiffs' *pro se* status and that the Court

letter cannot serve as a protective or an informal claim. This letter was a request to "waive" penalties, not a request to refund penalties. Indeed, the Wus did not pay the penalties until four months after the letter and thus were in no position to claim a refund on March 18, 2010. (*See* Dkt. #34, Compl. at Ex. A-4 – A-7.)[2] Further, the letter fails to state an informal claim in that it does not request a refund of tax penalties nor set forth in detail each ground upon which the refund is claimed. *Commercial Nat'l Bank of Peoria*, 874 F.2d at 1171.

However, the June 23, 2011, letter to the IRS sets forth in detail a request for a refund of "late payment penalty" and "late filing penalties" on returns filed for years 2007 to 2009. (Dkt. #22 at Ex. V.) The letter also explains the grounds supporting the refund claim, including that the delay in filing their returns was "due to reasonable cause." (*Id.* citing IRS Regulation § 301.651-1(c)(1).) The Court finds that the June 23, 2011, letter constitutes an informal claim. Because this refund claim was made before the statute of limitations had run on March 13, 2013, the claim is duly filed with the IRS. 26 U.S.C. § 6511(a) (claim for refund must be filed within the later of 3 years of filing a tax return or 2 years from time tax paid). Additionally, pursuant to 26 U.S.C. § 6532(a)(1), a plaintiff must file her federal court complaint within two years of receiving notice of claim disallowance. At the earliest, the Wus received notice of disallowance of this informal refund claim on April 19, 2013, (Dkt. #34 at Ex. C), and thus the statute of limitations had not run by the time they filed this action on May 28, 2014. For all these reasons, the Wus have satisfied their burden of establishing that this Court has subject matter jurisdiction

---

is considering a jurisdictional issue and may look to evidence beyond the complaint and the pleadings. *Bastien*, 205 F.3d at 990. Further, the Court recognizes as it did in open court, the difficulty of pursuing IRS claims for practitioners and laypersons alike and that the interest of justice is best served by allowing the Wus to refer to a previously filed document.

[2] The Court recognizes the Wus' apparent typo on their forms providing for a payment date of August 2, 2010. However, from the record as well as the parties' statements in open court, the Court understands the second payment date to be July 2, 2010.

over the four penalty refund claims. Although confusing and perhaps improperly worded, the Court cannot ignore the fact that these claims need to be litigated further to determine if they are meritorious.

*2. Refund Claim for $688.41 in Interest*

This claim seeks refund of Mr. Wu's overpayment of interest for tax year 2008. The government does not contend that the Wus have completely failed to state a claim. Rather, it argues that the Court should find that the claim for interest is only in the amount of $10.10. Although the parties agree that Mr. Wu is entitled to some refund of interest paid, they dispute the late period for which the interest payment was assessed, and accordingly the amount.

The Wus seek a refund for interest paid on June 1, 2010, and July 2, 2010, alleging that the IRS inappropriately assessed interest because it determined that their June 1, 2010, payment was late when it was received on June 11, 2010. (Dkt. #34, Compl. at Ex. A-1; Dkt. #39 at 5-6.) However, it is unlikely that the Wus paid interest for a late payment *before* the payment was deemed late (the payment was due June 7, 2010). Nonetheless, the Wus argue that the payment was not late because the Code provides that the date of the postmark shall be deemed the date of payment. *See* 26 U.S.C. § 7502.

On the other hand, the IRS argues that the $688.41 was "interest properly charged" for late payment of Mr. Wu's 2008 tax for excess IRA contributions for the period from April 15, 2009, to June 11, 2010, but present no facts or evidence regarding when this amount was assessed against the Wus. Instead, the government explains that the amount of interest due on April 15, 2009, was actually $689.00, which was not paid by the Wus until June 1, 2010. The government admits that interest was charged up until June 7, 2010, and that the Court should find that Mr. Wu has stated a claim for interest in the amount of $10.10 (the difference between interest charged from June 2, 2010, until June 7, 2010). In a perplexing departure, the Wus

5

contend in response that the $688.41 figure is the difference between the amount Mr. Wu paid on July 2, 2010, for 2007, 2008, 2009 taxes and penalties ($12,956.84) and the amount assessed for tax year 2009 ($12,268.43). (Dkt. #39 at 5; Dkt. #34, Ex. B-4.) While the conclusion is the same, it is unclear under which theory the Wus seek recovery.

Further complicating matters, it appears that the Wus paid the $688.41 (or $689.00 according to the government) in interest twice: the first time on June 1, 2010, in the payment of $32,443.12 that the government admits included the interest assessed for 2008 (Dkt. #37 at 4); and a second time on July 2, 2010, as noted above. Also unclear is whether any portion of the apparent overpayment, whether $10.10, $688.41, or some other figure, was used by the IRS to satisfy the Wus' other outstanding tax liability, as it appears that their payments were applied piecemeal to taxes, penalties and interest owed at the IRS' discretion. (Dkt. #34, Ex. C.) Whether or not this method is appropriate under the Code, it has caused confusion that the IRS may be able to readily resolve by conferring with the Wus outside of the adversarial process. The motion to dismiss this claim is denied.

*3. Two Refund Claims, Totaling $26,511.61 for 2009 Taxes*

The Wus each seek a refund for the taxes they paid on their 2009 excess IRA contributions. The government contends that the Court lacks subject matter jurisdiction over Mrs. Wu's claim because it was untimely filed. Pursuant to 26 U.S.C. § 6532(a)(1), a plaintiff must file her federal court complaint within two years of receiving notice of claim disallowance. Mrs. Wu received notice of disallowance on July 20, 2010, yet did not file this action until May 28, 2014. (*See* Dkt. #12 at Ex. G-4, p. 44.) Accordingly, Mrs. Wu has not timely filed her claim and therefore it is dismissed.

The government further contends that notwithstanding the jurisdictional issue, both Mr. and Mrs. Wu fail to state a claim because each needed to withdraw the excess contributions by

6

the end of 2009 to avoid the excess contribution tax for tax year 2009. The Court agrees.

The IRS imposes a tax of 6 percent of the amount of excess contributions in an IRA for each taxable year that the IRA contains excess contributions. 26 U.S.C. § 4973(a)(1). The tax is assessed in the year in which the contributions are deposited and for each subsequent year at the end of which the contributions remain in the IRA. *Id.* § 4973(b)(1), (2). The Wus made excess contributions to their IRAs in 2007 and did not withdraw these funds until March 23, 2010. They now seek a refund of excess contribution taxes paid for 2009. Thus, the applicable provisions are those related to excess contributions from previous years which are found in an individual's account at the end of a subsequent year. A taxpayer can reduce the amount of excess contribution from a preceding year by withdrawing the amount so that it is not reflected in the IRA "as of the close of the calendar year in which the taxable year begins." 26 U.S.C. § 408(d)(2)(C); § 4973(b)(2)(A). In other words, in order for the Wus to avoid the 6 percent tax for the 2007 excess contributions which remained in their IRAs in 2009, they at a minimum needed to withdraw the excess funds by the end of calendar year 2009.

Understandably, the Wus misconstrue the Code when they argue that they need only have withdrawn their 2007 excess contributions which remained in their accounts at the end of 2009 by the day their 2009 taxes were due, or April 15, 2010. However, withdrawals made before the tax return due date are only considered against excess contributions made in that same tax year. 26 U.S.C. §§ 4973(b), 408(d)(4). Accordingly, the Wus withdrawals in 2010 were not sufficient to eliminate their excess contribution tax liability for year 2009 and their claims fail.

**Conclusion**

For the foregoing reasons, defendants' motion to dismiss [37] is granted in part and denied in part. Mrs. Wu's refund claim for 2009 taxes is dismissed without prejudice for lack of subject matter jurisdiction. Mr. Wu's refund claim for 2009 taxes is dismissed with prejudice for

failure to state a claim. Defendant's motion to dismiss the four refund claims for late penalties and the claim for interest is denied. Defendant's motion for reconsideration [37] is denied as moot. Further, for the reasons above, the Court reiterates its statements at the hearing that the complicated history and posture of this case make it a strong candidate for sincere settlement talks.

SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: June 9, 2015